GRASSIN (UNITED STATES v.). See Case No. 15,248.
GRATIOT (UNITED STATES v.). See Case No. 15,249.

## Case No. 5,704.

### The GRATITUDE.

[3 Ben. 108.] [1]

District Court, S. D. New York. Dec., 1868.

COLLISION IN THE KILLS—SCHOONER AND STEAMER—LOOKOUT—SHEER.

1. Where a collision occurred in the night, between a steamboat and a schooner, each party claiming that the other vessel sheered across the other's bows: *Held*, that the fact that the sails of the schooner did not jibe, was sufficient to confirm the evidence from the schooner, that she made no change.

2. The steward, who was standing by the companion way, and was no mariner, and had not been stationed as a lookout, was no proper lookout.

[Cited in The Ancon, Case No. 348.]

3. The steamboat was in fault, in not having a proper lookout, and in not avoiding the schooner, and was liable for the collision.

In admiralty.

BENEDICT, District Judge. This is a cause of collision, instituted by Charles Bremner, owner of the schooner Genius, to recover of the propeller Gratitude the damages occasioned by the sinking of his schooner, in the Kills, on the night of June 3, 1867. The theories and testimony of the respective parties are in direct conflict, and cannot be reconciled. I have, however, little hesitation in deciding between them, upon the pleadings and proofs, as they stand.

The evidence shows that, on the night in question, the wind was light, from the southwest, the tide running flood in the Kills, and it was not so dark but that lights of vessels could be seen at the distance of a mile at least. The schooner was running east, at the slow rate of about one mile an hour, with her boom off to the port. The propeller was running west, at the rate of about five miles an hour. The two vessels came in contact at right angles, with sufficient force to knock a man overboard. and to cut into the starboard side of the schooner, amidships, so that she sunk before she could be got to the shore.

The libellant insists that the vessels were brought in contact by the steamer's suddenly porting her helm, and attempting to cross the bows of the schooner, when close upon her. The claimant insists that it was done by the schooner, which attempted to cross the bows of the steamer, and bore away when so near that she could not be avoided, notwithstanding the engines of the propeller were at once stopped, and backed. It is clearly proved, in the case, by many witnesses, and disputed by none, that the

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

schooner did not jibe, at any time, but that her boom continued off to port, without change. This circumstance is sufficient, in my mind, to confirm the very positive testimony of persons on board the schooner, that no change was made in the course of the schooner.

If this be true, it follows that the steamboat must be held in fault, for not avoiding the schooner, which could easily be seen. I have no doubt that the collision was the result of the sheer of the steamboat, when near upon the schooner, and that it was caused by the want of a careful lookout on the steamboat. No person was stationed forward, on the steamboat, to perform the duty of a lookout. The steward was forward, standing by the companion way, from which he had come out, and was looking out forward, he says; but he also says that he was not stationed there for that purpose, and that there was no lookout forward—in this, contradicting the pilot of the steamboat, who swears that he stationed the steward forward, as a lookout. This steward was no mariner, and it was no part of his duty to look out, and, manifestly, he was not stationed where he was for that purpose. The oath of the pilot, that he stationed the steward as a lookout, therefore, is well calculated to cast discredit upon the whole evidence. The preponderance of evidence being in favor of the libellant's story, the decree must be for the libellant, with an order of reference to ascertain the amount of damages sustained.